UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BREVARD EXTRADITIONS, INC., etc. et al.,

Plaintiffs,

v. CASE NO. 8:12-CV-2079-T-17MAP

FLEETMATICS, USA, LLC, etc., et al.,

Defendants.

_______________________/

ORDER

This cause is before the Court on:

Dkt. 17 Motion to Dismiss
Dkt. 21 Response

In the Amended Complaint (Dkt. 13), Plaintiffs Brevard Extraditions, Inc., d/b/a U.S. Prisoner Transport, and Robert Downs, allege a violation of Sec. 934.03(1)(a)(b)(c)(d), Florida Statutes. Plaintiffs seek the award of statutory damages, a permanent injunction, attorney's fees, costs and interest pursuant to Sec. 934.10, Florida Statutes. Plaintiffs' Amended Complaint is a class action.

Defendants move to dismiss the Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs oppose the Motion.

I. Standard of Review

"Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed

factual allegations" are not required, Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," Id., at 570. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556. Two working principles underlie Twombly. First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. Id., at 555. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. Id., at 556. A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1955-1956 (2009)(quoting Bell Atlantic v. Twombly, 550 U.S. 544 (2007).

II. Discussion

The Amended Complaint includes Plaintiff's claim for violations of Sec. 934.03, Florida Statutes:

**934.03. Interception and disclosure of wire, oral, or electronic communications prohibited**

(1) Except as otherwise specifically provided in this chapter, any person who:

(a) Intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, oral, or electronic communication;

(b) Intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when:

1. Such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or

2. Such device transmits communications by radio or interferes with the transmission of such communication;

(c) Intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

(d) Intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

......

shall be punished as provided in subsection (4).

Plaintiffs allege that Defendants' representatives contacted Plaintiff Downs by telephone on October 6, 2011 to provide a demonstration of Defendants' GPS vehicle tracking system. Plaintiff was not notified that the call would be recorded; Defendants recorded the call without Plaintiff's consent. Plaintiff Downs does not recall all of the content and information that was disclosed during his recorded phone call. (Dkt. 13, p. 3, par. 6).

At a later time, a former representative of Defendants notified Plaintiff Downs that his call was recorded, along with phone calls of other consumers. Plaintiffs identify consumers as "companies and individuals working in the following industries: trucking services, transportation services, HVAC services, sheriff offices, police departments, oil fields, tankers, construction, prisoner transport, wrecker services, coach and bus lines, electrical services, beverage and food distributors, and plumbing services.

Plaintiffs allege that Defendants, as a matter of practice and procedure, contacted consumers by telephone, intentionally recorded all inbound and outbound telephone calls without regard to the content of the conversations, and maintained the telephone recordings for an indefinite period, whether or not the phone calls contained personal information. Plaintiffs further allege that Defendants requested personal information as a matter of course during the telephone calls. The telephone call scripts provided to Defendants' sales representatives did not require notification to the consumers that the telephone calls would be recorded.

Plaintiffs allege that telephone recordings of consumers were routinely reviewed by, made available to and fully disclosed to all management and sales representatives without regard to personal information disclosed during the calls. The personal information included financial information, such as banking, billing, credit card and tax information, as well as personal information regarding business partners, spouses and family members. (Dkt. 13, p. 6, par. 12). The primary purpose for intentionally recording all inbound and outbound calls was to glean information that would allow sales representatives to close sales. Personal information was routinely exploited in connection with follow-up calls. Plaintiffs allege that the recording device was in the manager's office. If a sales representative wanted to review a conversation, the representative would provide the time and date to the manager, who would "pull it from the tape."

Plaintiffs allege that it was the express intent of Defendants to request, obtain and use personal information from all persons called and recorded without their knowledge and consent, and without any selectivity, such that Defendants' intent and practice of intercepting, recording, disclosing and using the telephone calls went beyond legitimate or ordinary business purpose as follows:

> a) Defendants' telephone recordings were routinely reviewed by, made available to and otherwise fully disclosed to all management and sales representatives;
>
> b) the persons called were expressly not told of the recording for fear that they would be less likely to offer personal information;
>
> c) Defendants' manager, upon Plaintiffs' information and belief, considered all telephone calls to be a potential in-road for introduction of the persons called to his personal religious beliefs.

(Dkt. 13, pp. 6-7).

II. Discussion

In determining a Motion to Dismiss, the Court considers whether the factual allegations in the complaint are sufficient to support the claims alleged.

The Court notes that Chapter 934 was modeled after the Federal Wiretap Act, 18 U.S.C. section 2510 et seq., as amended by the Electronic Communications Privacy Act of 1986. Florida follows federal courts as to the meaning of provisions after which Chapter 934 was modeled. See O'Brien v. O'Brien, 899 So.2d 1133, 1135–36 (Fla. 5th DCA 2005); Minotty v. Baudo, 42 So.3d 824, 832 (Fla. 4th DCA 2010).

A. Standing

Plaintiffs have alleged four claims: interception, use of a device to intercept, intentional disclosure of contents to another person, knowingly obtained through an interception which violates the statute, and intentional use of contents of an interception, knowing the contents was obtained through an interception which violates the statute.

Sec. 934.03(2)(d), Florida Statutes provides:

> It is lawful under ss. 934.03-934.09 for a person to intercept a wire, oral, or electronic communication when all of the parties to the communication have given prior consent to such interception.

In order to have standing to challenge the interception of a conversation, a plaintiff must have been a party to the conversation, or one whose premises served as the site of the surveillance. Mozo v. State, 632 So.2d 623, 625 -626 (Fla. 4th DCA 1994). Plaintiffs allege that Plaintiffs and the other consumers did not consent to the interception, such that the interception violated Chapter 934.03, Fla. Stat. As to the claims for interception and use of a device to intercept, the factual allegations of the Amended Complaint are sufficient.

The Amended Complaint does not contain any factual allegations concerning Plaintiff Downs' conversation with a sales representative on October 6, 2011. Plaintiffs do not allege that Plaintiff Downs' conversation with a sales representative included confidential financial and personal information which was intercepted without his consent, and then intentionally disclosed and intentionally used by Defendants, knowing the information was intercepted in violation of the statute. Plaintiff Downs was a party to the conversation, and must have some idea of its scope. Without some additional factual allegations, however general, Plaintiffs do not have standing to assert the

intentional disclosure and intentional use claims as "aggrieved persons." The allegation of routine practice does not fill this factual gap. The Court notes that Plaintiffs intend that this case be granted class action status. It is not enough for a named plaintiff to have standing as to one claim asserted, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to the claim.

After consideration, the Court grants the Motion to Dismiss in part, with leave to file an Amended Complaint within fourteen days.

B. Reasonable Expectation of Privacy

Defendants argue that Plaintiffs have no reasonable expectation of privacy in the telephone call of October 6, 2011 because it was a sales call made in the ordinary course of business.

The Court understands the phone call from Defendants' sales representative to Plaintiffs to be a wire communication. Briggs v. American Air Filter Co., 630 F.2d 414, 417 (5th Cir.1980). Wire communications are generally protected regardless of whether the person making or receiving the communication has an expectation of privacy. PBA Local No. 38 v. Woodbridge Police Dept., 832 F. Supp. 808 (D.N.J. 1993). Plaintiffs' expectation of privacy is not relevant to statutory liability for the interception of wire communications. Id.

The Court has considered the following statutory definitions:

> (1) "Wire communication" means any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception including the use of such connection in a

> switching station furnished or operated by any person engaged in providing or operating such facilities for the transmission of intrastate, interstate, or foreign communications or communications affecting intrastate, interstate, or foreign commerce.
>
> (2) "Oral communication" means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation and does not mean any public oral communication uttered at a public meeting or any electronic communication.
>
> (3) "Intercept" means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.
>
> (18) "Aural transfer" means a transfer containing the human voice at any point between and including the point of origin and the point of reception.

Sec. 934.02, Florida Statutes. Plaintiffs allege that the telephone calls were recorded at Defendants' office; there is no allegation that there was an eavesdropping device at Plaintiffs' location. The language of the Florida statute indicates that not every oral communication is subject to the protection of Sec. 934. The Court notes that the definition of "wire communication" does not include the same qualifying "reasonable expectation of privacy" language as the definition of oral communication.

The Florida Supreme Court has interpreted the test set forth in the definition of "oral communication" as substantially the same test used in a Fourth Amendment right to privacy analysis. Mozo v. State, 632 So.2d 623 (Fla. 4th DCA 1994), approved, 655 So.2d 1115 (Fla. 1995). For a conversation to qualify as "oral communication," "the speaker must have an actual subjective expectation of privacy" in his oral communication, and society must be prepared to recognize the expectation as reasonable under the circumstances. State v. Smith, 641 So.2d 849, 852 (Fla. 1994). See Stevenson v. State, 667 So.2d 410, 411-412 (Fla. 1st DCA 1996).

As the Supreme Court states:

> [T]he Fourth Amendment cannot be translated into a general constitutional 'right to privacy.' That Amendment protects individual privacy against certain kinds of governmental intrusion, but its protections go further, and often have nothing to do with privacy at all. Other provisions of the Constitution protect personal privacy from other forms of governmental invasion. But the protection of a person's general right to privacy-his right to be let alone by other people--is, like the protection of his property and of his very life, left largely to the law of the individual States. (footnotes omitted).......[T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. See Lewis v. United States, 385 U.S. 206, 210, 87 S.Ct. 424, 427, 17 L.Ed.2d 312; United States v. Lee, 274 U.S. 559, 563, 47 S.Ct. 746, 748, 71 L.Ed. 1202. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. See Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688; Ex Parte Jackson, 96 U.S. 727, 733, 24 L.Ed. 877.

Katz v. U.S., 389 U.S. 347, 350-352 (1967).

The Court applies a two-part test to determine whether a person has a reasonable expectation privacy in an intercepted oral communication: 1) Did the non-consenting party have a subjective expectation of privacy? and 2) Was the expectation of privacy one that society is prepared to recognize as reasonable? Brugmann v. State, 117 So.3d 39, 47-48 (Fla. 3d DCA 2013). Under Florida law, society does not recognize an absolute right of privacy, for purposes of the Florida Security of Communications Act (the wiretap statute), in a party's office or place of business. Cohen Brothers, LLC v. ME Corp., S.A., 872 So.2d 321 (Fla. 3d DCA 2004). Florida case law establishes that the following factors are considered in determining whether, under the totality of the circumstances, the expectation of privacy is one which society recognizes as reasonable:

> (1) the location where the communication took place; (2) the manner in which the communication was made; (3) the nature of the communication;

> (4) the intent of the speaker asserting Chapter 934 protection at the time the communication was made; (5) the purpose of the communication; (6) the conduct of the speaker; (7) the number of people present; and (8) the contents of the communication.

Brugmann at 49.

In the Amended Complaint, Plaintiffs allege that the telephone call was a sales call to offer a demonstration of Defendants' GPS tracking system. There are no factual allegations as to the content of the conversation between Plaintiff Downs and the sales representative. The Court has granted leave to Plaintiffs to amend the Amended Complaint as to this issue. The Court has determined that the telephone calls, as wire communications, are protected. However, if Court is required to make a determination as to Plaintiffs' expectation of privacy based on the totality of the circumstances, such a fact-intensive determination is appropriate at the summary judgment stage, rather than on a Motion to Dismiss.

After consideration, the Court denies the Motion to Dismiss as to this issue. However, Plaintiffs are granted leave to amend the Amended Complaint to include additional factual allegations relevant to the above factors, if Plaintiffs are able to do so.

C. Telephone Equipment Exemption; Business Extension Exemption

Defendants argue that the telephone equipment is the intercepting device at issue, and the telephone calls were made in the ordinary course of business. Telephone equipment provided to a user by a provider of wire or electronic communication service is not within the definition of "electronic, mechanical or other device." See Sec. 934.02(4)(a)(1)(2), Florida Statutes.

At this point, the Court does not know how the telephone calls were monitored

and recorded. In the Amended Complaint, there is a vague allegation of a tape recorder in the manager's office. The Court notes the following discussion of the Fifth Circuit Court of Appeals:

> The words 'acquisition . . . through the use of any . . . device' suggest that the central concern is with the activity engaged in at the time of the oral communication which causes such communication to be overheard by uninvited listeners. If a person secrets a recorder in a room and thereby records a conversation between two others, an 'acquisition' occurs at the time the recording is made. This acquisition itself might be said to be 'aural' because the contents of the conversation are preserved in a form which permits the later aural disclosure of the contents.... Alternatively, a court facing the issue might conclude that an 'aural acquisition' is accomplished only when two steps are completed—the initial acquisition by the device and the hearing of the communication by the person or persons responsible for the recording..... Either of these definitions would require participation by the one charged with an 'interception' in the contemporaneous acquisition of the communication through the use of the device.

U.S. v. Turk, 526 F.2d 654, 670 (5th Cir. 1976). The Court can only hope that the means of interception will be clarified at some point.

As to the issue of whether the phone call at issue was within the ordinary course of business, Plaintiffs allege that it was a sales call made to demonstrate Defendants' GPS tracking system, and there are no factual allegations as to the content of the intercepted and recorded phone call, specifically that Plaintiff revealed confidential financial and personal information during that call. The Court has granted leave to Plaintiffs to amend the Amended Complaint to include additional factual allegations.

At this stage, the Court cannot determine whether the business extension exemption or telephone equipment exemption applies to the factual scenario in this case. After consideration, the Court denies the Motion to Dismiss as to this issue. However, Plaintiffs are granted leave to amend the Amended Complaint to include

additional factual allegations to clarify the means of interception and recording, if Plaintiffs are able to do so.

D. Scope of Employment

Defendants argue that the conduct of the manager as to alleged efforts to promote the manager's church is outside the scope of the manager's employment as a matter of law, such that Defendants cannot be held vicariously liable for the conduct of the manager. Defendants contend there is no allegation that Scientology has anything to do with Defendants' GPS fleet management business, and no allegation that Scientology could serve the purposes of Defendants' fleet management business.

Plaintiffs respond that the facts alleged demonstrate that the manager obtained information from sales calls made in the course and scope of his employment and Defendants' business, and the recordings of the sales calls were made to serve Defendants. Plaintiffs argue that the manager's conduct in using and/or disclosing information from sales calls recorded in violation of the statute is only one fact which demonstrates that the purpose for Defendants' call interception program was too broad to trigger the business extension exception.

Under the doctrine of respondeat superior, an employer cannot be held liable for the tortious or criminal acts of an employee, unless the acts were committed during the course of the employment and to further a purpose or interest, however excessive or misguided, of the employer. Nazareth v. Herndon Ambulance Serv., Inc., 467 So.2d 1076, 1078 (Fla. 5th DCA 1985). Under Florida law, an employee's conduct is within the scope of his employment where: 1) the conduct is of the kind he was employed to perform; 2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and 3) the conduct is activated at least in part by a purpose to serve the master. Sussman v. Florida E. Coast Props., Inc. 557 So.2d

74, 75-76 (Fla. 3d DCA 1990). In general, a principal may be held liable for the acts of its agent that are within the course and scope of the agency. Roessler v. Novak, 858 So.2d 1158, 1161 (Fla. 2d DCA 2003). However, where a corporate agent acts adversely to the corporation's interests, the knowledge and misconduct of the agent are not imputed to the corporation. State of Fla. Dep't of Ins. v. Blackburn, 633 So.2d 521, 524 (Fla. 2d DCA 1994).

In this case, the Court understands that the alleged recording took place during work hours and at Defendants' Florida office. However, that is not the alleged misconduct which is outside the scope of the manager's employment. The alleged misconduct involves use and disclosure of information obtained from telephone calls intercepted without the consent of Plaintiff and consumers to accomplish a personal mission by the manager.

The factual allegations of the Amended Complaint indicate that Defendants' business mission is to be "a leading global provider of fleet management solutions for small and medium-sized businesses." (Dkt. 13, p. 3). Plaintiffs have alleged that Defendants' manager used the sales telephone calls to facilitate a personal mission involving the manager's religious beliefs. The allegation of a personal purpose is outside the scope of Defendants' business of marketing of a GPS vehicle tracking system or otherwise providing "fleet management solutions". This is not a case in which the alleged misconduct exceeds the authority of the employee, but is within the scope of employment; the conduct is not of the same general nature as that authorized. The Court understands Plaintiffs' allegations to mean that the manager's misconduct is incidental to the conduct authorized. There are no factual allegations in the Amended Complaint as to when and how Defendants' manager approached consumers to fulfill his personal mission of promoting Scientology. It is unclear whether Plaintiffs are asserting that Defendants' manager acted with the knowledge and approval of Defendants, that the conduct of the manager which is outside the scope of his agency

Case No. 8:12-CV-2079-T-17MAP

was calculated to benefit Defendants, that the consumers approached reasonably believed that the manager was acting on behalf of Defendants, or some other theory.

Unless the acts of the manager are imputed to Defendants, there is no basis to determine that Defendants are vicariously liable for a statutory violation of Sec. 934.03 based on the conduct of Defendants' manager. This issue is appropriate for disposition at a later stage, when there is a full record. After consideration, the Court denies the Motion to Dismiss as to this issue. Accordingly, it is

**ORDERED** that the Motion to Dismiss is **granted in part and denied in part**; Plaintiffs shall file a Second Amended Complaint within fourteen days.

**DONE and ORDERED** in Chambers, in Tampa, Florida on this 27th day of September, 2013.

ELIZABETH A. KOVACHEVICH
United State District Judge

Copies to:
All parties and counsel of record